ANDREW KURUC, SOPHIE KURUC SOLOTRUK AND JOHN SOLOTRUK, HER HUSBAND; ANNA KURUC HUBER AND FRANK HUBER, HER HUSBAND; MARY ANN KURUC PUZIO AND JOHN PUZIO, HER HUSBAND, PLAINTIFFS, v. WILLIAM KURUC AND MARY KURUC, HIS WIFE, DEFENDANTS.

IN THE MATTER OF THE ESTATE OF MATTHEW KURUC, LATE OF PASSAIC COUNTY, DECEASED.

Superior Court of New Jersey
Chancery Division

Decided December 5, 1952.

See also 15 *N. J. Super.* 401, 83 *A. 2d* 550.

*Mr. Ervan F. Kushner* and *Mr. Sam Monchak*, attorneys for plaintiffs.

*Mr. Frank W. Shershin* (*Mr. Aaron Dines* appearing), attorneys for defendants.

GRIMSHAW, J. S. C.   This litigation was occasioned by a quarrel among the children of Matthew Kuruc, deceased, over the disposition of his estate.   Several complaints were filed.   By consent they were consolidated for trial in this court.

The basic issues are:   (1) whether an agreement between the parties, terminating litigation in which Matthew Kuruc was plaintiff, and William Kuruc defendant, was consummated;   (2) whether a will of Matthew Kuruc, dated June

24, 1948, was the product of undue influence on the part of William Kuruc, and hence void; and (3) whether a lease dated June 26, 1947, given by Matthew Kuruc to William Kuruc, and covering premises at 188 Ackerman Avenue, Clifton, New Jersey, should be set aside.

Matthew Kuruc was a native of Czechoslovakia, who came to this country many years ago and settled in Clifton. His family consisted of his children, the plaintiffs Sophie K. Solotruk, wife of John Solotruck, Anna K. Huber, wife of Frank Huber, Andrew W. Kuruc, Mary Ann Puzio, wife of John Puzio, and the defendant William Kuruc. During his life in this country Matthew Kuruc gathered together a sizeable estate. It consisted of four parcels of real property and personal property of an undisclosed amount. The real property consisted of a house and lot at 195 Ackerman Avenue; a house and lot at 22 Loretta Street; a building with a store on the first floor and apartments above, at 188 Ackerman Avenue, and four vacant lots on Mount Prospect Avenue, all in the City of Clifton.

In 1942 Matthew Kuruc suffered a stroke. Although he recovered from that illness his condition thereafter was somewhat precarious and in the last year of his life his decline in health was rapid.

On December 9, 1943 Kuruc executed a will in which the property at 188 Ackerman Avenue was given to Mary Ann Puzio and William Kuruc. The contents of the store at that address were given to William Kuruc. 195 Ackerman Avenue was given to Anna Huber and Sophie Solotruk. 22 Loretta Street was devised to Andrew Kuruc, on condition that he pay $150 each to William Kuruc and Mary Ann Puzio. Two of the lots on Mount Prospect Avenue were devised to William and the other two to Andrew. All of the rest of his estate was bequeathed to his children equally. Andrew Kuruc was named as the executor.

On July 22, 1947 Kuruc executed a second will. In this document 188 Ackerman Avenue was devised to William Kuruc. Mary Ann Puzio, Anna Huber and Sophie Solo-

truk received 195 Ackerman Avenue. Andrew received 22 Loretta Street, and the lots on Mount Prospect Avenue were divided equally between William and Andrew. It was also provided that William and Andrew should pay $100 each to Mary, Anna and Sophie. The residue was left to the children equally. William was named as executor.

On June 24, 1948 Kuruc executed his last will. Under its terms William received 188 Ackerman Avenue. William, Anna and Sophie were given 195 Ackerman Avenue. Andrew was given 22 Loretta Street. And the Mount Prospect Avenue lots were divided equally between William and Andrew. Mary Ann Puzio was left the sum of $10. The remainder of the estate was divided equally between his children. William was named as executor.

On April 26, 1950 Matthew Kuruc conveyed 195 Ackerman Avenue to Sophie Solotruk and Anna K. Huber. On the same day he conveyed 22 Loretta Street to Andrew Kuruc. The following day Andrew, Sophie and Anna executed an agreement in which it was provided that in consideration of the conveyance to them of the several properties they agreed to support Matthew Kuruc for the balance of his life and also agreed to turn over to him the rents from the properties conveyed.

Thereafter, on May 17, 1950, Matthew Kuruc conveyed to William Kuruc the property known as 188 Ackerman Avenue. William Kuruc did not sign the agreement to support Matthew. In fact, he refused to do so.

By the several conveyances Matthew Kuruc completely stripped himself of all of his real property, with the exception of the four vacant lots on Mount Prospect Avenue. The bulk of his personal property, consisting of $3,000 in cash, had been given to his son Andrew Kuruc in 1947, as a loan without interest. Of this sum only $500 had been repaid. So that after the conveyances were made Matthew Kuruc was practically destitute.

On September 28, 1950 a complaint against William Kuruc was filed on behalf of Matthew Kuruc. This complaint had

for its purpose the setting aside of the conveyance to William Kuruc of 188 Ackerman Avenue. The ostensible ground upon which the complaint was based, was a charge that the conveyance was without consideration, improvident and was made when Matthew Kuruc was without the benefit of independent advice. It developed, however, in the later litigation, that the real purpose of the action was to compel William Kuruc to sign the support agreement.

When the matter came on for hearing an attempt was made to take the testimony of Matthew Kuruc. He was, however, completely unable to answer any questions put to him, and, in fact, gave no indication that he understood them or the nature of the proceeding in which he was engaged. The hearing was terminated by an agreement on the part of the parties that all of the real property would be reconveyed to Matthew Kuruc. A statement to this effect was placed on the record. At the same time the attorney representing Matthew Kuruc requested the return to him of the 1948 will, which was in the possession of William Kuruc.

On March 28, 1951, the day following the settlement agreement, William Kuruc and his wife executed and delivered to his attorney a deed reconveying to Matthew Kuruc 188 Ackerman Avenue. On March 31, 1951 Andrew Kuruc, Sophie Solotruk and Anna Huber joined in a deed reconveying to Matthew Kuruc 195 Ackerman Avenue and 22 Loretta Street, and delivered the instrument to their attorney. Before any of the deeds could be recorded Matthew Kuruc died on April 1, 1951.

On May 18, 1951, on motion made on behalf of the present plaintiffs, the recording of the deeds was ordered. A companion motion to substitute the present plaintiffs as parties plaintiff in the prior litigation, in the place of Matthew Kuruc, was denied, as was a motion for an order directing that the real property be conveyed to the heirs at law of Matthew Kuruc in equal shares. Thereafter, following protracted negotiations, the present litigation was started.

It is now insisted that the agreement which terminated the prior litigation was never consummated because William Kuruc did not surrender the 1948 will before the death of Matthew Kuruc. It is also asserted that the surrender of the will was a condition precedent to the settlement. The lawyer who had represented Matthew Kuruc in the former suit testified that it was the intent of the parties that the will should be destroyed. Which of the parties contemplated the destruction of the will does not appear. I am satisfied, as a result of having seen Matthew Kuruc on the stand, that he did not entertain such an idea. On the day of the settlement he was in no condition to appreciate anything that was transpiring. In fact, the settlement itself would not have been approved had it been other than a complete surrender to the old man.

The point which is now made of the failure to obtain possession of the will is plainly an afterthought. In May, when the application was made for the order to record the deeds, no mention was made of the will. And it is difficult to see how possession of the will could have any importance. If, at the time of the litigation, Matthew Kuruc possessed testamentary capacity, which I doubt, he could have executed a new will had he desired to do so. If he did not have testamentary capacity at that time, then obviously the destruction of the will would have been a futile gesture.

In my opinion the agreement which terminated the litigation between Matthew Kuruc and his son William was fully consummated. The fact that the old gentleman died shortly thereafter is one of those unforeseen circumstances with which we cannot be concerned.

We come next to a consideration of the facts surrounding the execution of the will of June 24, 1948. There is no testimony from which it might be concluded that at that time Matthew Kuruc was lacking in testamentary capacity. The testimony is that on June 24, 1948, at the request of Matthew Kuruc, William Kuruc took him to the office of Frank W. Shershin, an attorney who had previously per-

formed some legal work for Matthew Kuruc. At the office of Mr. Shershin there were present Mr. Shershin, Steven Koribanics, another attorney, who at that time was Shershin's clerk, Matthew Kuruc and William Kuruc. Both Shershin and Koribanics spoke Slavic, the native tongue of Matthew Kuruc. A discussion was had as to the contents of the proposed will. It was carried on both in Slavic and English. William Kuruc was present during the discussion. However, attempts by him to participate were suppressed by Mr. Shershin. When the details had been worked out Shershin prepared the will. When it was ready another discussion of its contents was had. In this latter discussion William Kuruc did not participate, he having been excluded from the room. Again the conversation was carried on both in Slavic and in English. When the old man was satisfied, the will was executed, Shershin and Koribanics acting as witnesses.

That the technical formalities attendant upon the making of a will were scrupulously observed, is not open to question. The caveators, the plaintiffs here, charge, however, that at the time of the execution of the will Matthew Kuruc was under the influence of William Kuruc and that the will was an expression of the desires of William Kuruc rather than those of Matthew Kuruc. In other words, the plaintiffs assert that the will was the product of undue influence exerted upon the testator by William Kuruc.

█ It is well settled in this State that there is a presumption of law in favor of the validity of a will and that he who contests it must clearly establish facts to overcome that presumption. The burden of proving undue influence is upon him who asserts it and the proof must be clear and convincing. *In re Raynolds,* 132 *N. J. Eq.* 141 *(Prerog.* 1942); *Gellert v. Livingston,* 5 *N. J.* 65 (1950).

"It has been said that in order to shift the burden of proof to a proponent of a will, on an issue of undue influence, there must be some other elements 'added to proof that testator's mind was enfeebled so that it was difficult to resist improper influence and the

establishment of intimate confidential relationship.' It is said that 'slight circumstances' are sufficient to be added. Among the elements which may be thus added, which have been mentioned in the authorities, are these: (1) the initiation of proceedings for the preparation of the instrument; (2) participation in such preparation; (3) presence at the execution of the will; (4) efforts to exclude the natural objects of testator's bounty from his society; (5) concealing the making of the will; and (6) taking possession of the will." *In re Raynolds, supra.*

There is no credible testimony from which it might be concluded that at the time of the execution of the will the testator's mind was enfeebled. And while it is undoubtedly true that William took care of his father's business affairs, the relationship can hardly be said to have been one of trust and confidence. The record is full of testimony given by the plaintiffs themselves of statements by the testator, indicating resentment of efforts by William to improve his own position and the testator's determination not to permit it. The impression is left that the testator was constantly on guard against importunities by William. William was present during the preliminary negotiations with reference to the will but he was excluded from the room when the final draft was discussed and the will was executed. And even while he was present he was not permitted to participate in the discussion. William retained possession of the will, it is true, but its existence was not concealed. In fact, the will was shown to two of the daughters.

An examination of the three wills executed in 1943, 1947 and 1948, respectively, discloses that the net result of the changes made was the practical exclusion of Mary Ann Puzio from participation in the estate. She was the only one who can be said to have suffered from the execution of the 1948 will. And oddly enough she is the only one of the children who did not participate actively in the litigation. She was not called as a witness and apparently was not interested in the outcome.

I am of the opinion that there is not sufficient evidence of improper conduct on William's part to justify a refusal

of probate. The exercise of undue influence upon Matthew Kuruc by William Kuruc has not been established. The will of June 24, 1948 will be admitted to probate.

There remains then, only a consideration of the lease of the premises at 188 Ackerman Avenue, dated June 26, 1947. In view of the fact that 188 Ackerman Avenue was devised to William Kuruc, the lease loses most of its importance. The only testimony concerning the lease was that it was drawn up by William Kuruc and signed by his father without the benefit of legal advice. There was no evidence from which it might be concluded that the lease was improvident, and as has been already said, William Kuruc did not occupy a dominant, confidential position in his dealings with his father. Matthew Kuruc, at the time of the execution of the lease, so far as the testimony shows, was in complete command of his faculties and he never sought thereafter to disavow the lease. The prayer for the cancellation of the lease will be denied. *In re Fulper*, 99 *N. J. Eq.* 293 (*Prerog.* 1926).

Judgment in accordance with the views expressed above.